# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | Sidney I. Schenkier |
|---|---|---|---|
| **CASE NUMBER** | 00 C 883 | **DATE** | 10/26/2000 |
| **CASE TITLE** | Corporate Express, Inc. vs. US Office Products Co., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Report and Recommendation. It is recommended that plaintiff's request for a preclusion order be denied. Specific written objections to this report and recommendation may be served and filed within 10 business days from the date this order is served. Fed.R.Civ.P. 72(a). Failure to file objections with the district court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by the Court in the report and recommendation. *See Video Views, Inc. v. Studio 21, Ltd.* 797 F. 2d 538, 539(7th Cir. 1986).

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | OCT 27 2000 | |
| ✓ | Notified counsel by telephone. | | date docketed | 75 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| RO | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CORPORATE EXPRESS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 00 C 0883 |
| | ) | |
| US OFFICE PRODUCTS COMPANY, | ) | |
| a parent corporation; US OFFICE | ) | District Judge Norgle |
| PRODUCTS, CHICAGO DISTRICT, | ) | |
| L.L.C., a wholly owned subsidiary of | ) | Magistrate Judge Schenkier |
| US Office Products Company; | ) | |
| DENNIS RABY, individually, and | ) | |
| THOMAS ROARK, individual, | ) | |
| | ) | |
| Defendants. | ) | |

DOCKETED OCT 27 2000

## **REPORT AND RECOMMENDATION**

After an extensive hearing on March 24, 2000, the District Judge in this case found that defendants US Office Products Company ("USOP") and its subsidiary, US Office Products, Chicago District, L.L.C. ("USOP-Chicago"), violated several court orders concerning discovery. The District Judge denied the request by plaintiff Corporate Express, Inc. that a default judgment be entered against USOP defendants (03/24/00 Tr. 131), finding that imposition of that sanction would be "excessive" (*Id.*, at 134). The District Judge also denied plaintiff's motion for sanctions under 28 U.S.C. § 1927, but awarded the plaintiff its fees and costs incurred in connection with bringing the sanctions motion (*Id.*, 134-35). Those fees and costs, which totaled $23,834.04, have been paid.

Although denying the sanction of the default judgment, the District Judge invited plaintiff to brief the question of whether a preclusion order would be appropriate, and if so, what form that order should take. Plaintiff accepted this invitation, and on March 31, 2000, filed a brief suggesting

three possible preclusion orders: (1) an order precluding the USOP defendants from offering into evidence documents regarding the specific factual issues covered by plaintiff's document requests; (2) an order precluding the USOP defendants from affirmatively offering any evidence on the factual issues covered by plaintiff's document request, while permitting the USOP defendants to cross-examine plaintiff's witnesses; or (3) an order precluding the USOP defendants from opposing in any way plaintiff's claims -- which would have the practical effect of converting the trial from a contested proceeding on the merits to an unopposed evidentiary prove-up by plaintiff. Not surprisingly, the USOP defendants oppose any of these preclusion orders.

The request for a preclusion order is now fully briefed, and pursuant to an order dated August 23, 2000, has been referred to this Court for a report and recommendation.[1] The Court has reviewed the briefs submitted by the parties on the preclusion issue and the relevant authorities. The parties also have directed the Court to various transcripts, which the Court has now reviewed.[2] Having reviewed these materials, the Court concludes that plaintiff's preclusion proposals – all of which would, to varying degrees, tilt the playing field in plaintiff's favor on the merits determination of this case – are disproportionate to any prejudice that the plaintiff suffered from the USOP

---

[1] The August 23, 2000 order also referred to this Court the responsibility to set the discovery schedule and supervise all discovery issues, to oversee the preparation of pretrial materials, and to conduct a settlement conference. At the time of the referral, there were three other motions pending: plaintiff's motion for a temporary protective order (doc. # 49); plaintiff's revised motion to compel discovery (doc. # 47); and defendant US Office Products Company's and defendant US Office Products, Chicago District, L.L.C.'s motion to compel production of documents (doc. # 65). This opinion addresses only the motion for a preclusion order; the other pending discovery motions will be addressed by separate orders.

[2] The Court has reviewed transcriptions of various voicemail messages left on the answering machine of the District Judge and his deputy by Ms. Annette Fields, an associate general counsel at USOP, on February 15 and 16, 2000, as well as the reports of proceedings before the District Judge on February 14, 2000, February 22, 2000, March 3, 2000, March 10, 2000, March 14, 2000, March 22, 2000, March 24, 2000, April 25, 2000, May 19, 2000 and July 21, 2000.

2

defendants' violation of the court orders. Accordingly, this Court respectfully recommends that no preclusion order be entered.

In part I of this Report, we set forth the factual background relevant to this Court's recommendation. In part II, we explain the reasoning that leads to this recommendation.

I.

A.  **The Allegations of the Complaint.**

Corporate Express, Inc. brings this diversity action seeking injunctive relief and damages for alleged breaches of noncompete agreements and related statutory and common law torts. As alleged in the amended complaint, Corporate Express supplies businesses with office supplies and furniture, computer software, promotional products and services and document imprint management (Am. Compl. ¶ 5). Corporate Express alleges that it employed defendants Dennis Raby and Thomas Roark (*Id.*, ¶¶ 8-9), and that as a result of their employment, Messrs. Raby and Roark had access to Corporate Express' confidential information concerning customers, pricing, cost and marketing strategies (*Id.*, ¶¶ 11-15). Corporate Express alleges that Messrs. Raby and Roark both signed noncompete agreements which precluded them, among other things, from (1) working for a direct competitor of Corporate Express in the same Chicagoland market, (2) contacting or soliciting Corporate Express customers in order to divert business, or (3) using or disclosing trade secret or confidential information they obtained while employed by Corporate Express – for a period of one year in the case of Mr. Roark and two years in the case of Mr. Raby (*Id.*, ¶¶ 17-18).

Corporate Express alleges that Mr. Roark's employment with Corporate Express terminated on September 1, 1999, and that Mr. Raby's employment terminated with Corporate Express on November 24, 1999 (*Id.*, ¶¶ 19-20). Corporate Express alleges that the USOP defendants are

3

competitors of Corporate Express (*Id.*, ¶¶ 7, 28). Corporate Express alleges that in the fall of 1999, shortly after they left Corporate Express, Messrs. Raby and Roark both became employed by USOP-Chicago, and improperly used trade secret or confidential information they obtained while employed at Corporate Express to obtain business (*e.g.*, *id.*, ¶¶ 24-25).

Corporate Express alleges that by this conduct, Messrs. Raby and Roark breached their noncompete agreements (Count I); that all defendants misappropriated or threatened to misappropriate Corporate Express' trade secret information, in violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.* (Count II); and that USOP and USOP-Chicago committed the tort of intentional interference with business expectancy by hiring Messrs. Raby and Roark when they knew that was prohibited by the noncompete agreements, and by knowingly allowing them to use confidential information to obtain business (Count III). USOP and USOP-Chicago deny any wrongdoing, and in addition have asserted affirmative defenses alleging, among other things, laches and the invalidity of the noncompete agreements as void against public policy.

### B. The Temporary Restraining Order.

On February 14, 2000, the day the original complaint was filed, Corporate Express appeared before the District Judge seeking a temporary restraining order. Counsel for the defendants were not in attendance; plaintiff's counsel represented to the District Judge that notice had been given to corporate counsel for USOP in Pittsburgh earlier that morning by leaving a voicemail, and that the pleadings had been faxed to USOP's corporate counsel in Pittsburgh thereafter (02/14/00 Tr. at 2). The District Judge granted a temporary restraining order ("TRO"), limited to enjoining the defendants "and any of their agents, servants, employees and attorneys and all others in active concert or participation with them from misappropriating, disclosing or using trade secrets belonging

4

to Corporate Express" (*Id.*, at 4-5). The District Judge indicated that the TRO would expire on February 22, 2000, and that if Corporate Express wished to seek an preliminary injunction, it should do so by that time (*Id.*, at 5).

Corporate Express also sought an order permitting expedited discovery. The District Judge granted that request, "in order to get this matter moving" (*Id.*, 5-6). Thus, on February 14, 2000, the Court ordered that defendants respond to Corporate Express's 28-paragraph document request by 3:00 p.m. on Thursday, February 17, 2000, and to produce witnesses for deposition on or before February 21, 2000. The matter was set for a status conference on February 22, 2000 at 9:30 a.m. (*see* 02/14/00 Order).

### C. The USOP Defendants Response to the Discovery Request.

The USOP defendants did not file a response to plaintiff's written discovery request on February 17 as ordered; nor did they authorize counsel to appear in this case on their behalf. Rather the next day, February 18, 2000, counsel for the USOP defendants first filed their appearance in this case. According to defense counsel, the reason that the appearance and written response was not filed prior to February 18 was that USOP's associate general counsel, Annette Fields, thought that the matter had been settled through discussions with plaintiff's in-house counsel.[3] It was not until

---

[3] On February 15, 2000, shortly after entry of the TRO, Ms. Fields embarked upon a series of voicemail messages left on the telephones of the District Judge's chambers and the District Judge's deputy clerk. These messages, one more incendiary than the next, concluded with a voicemail message left on the District Judge's telephone on the morning of February 16, in which she threatened not to respond to the TRO. Ms. Fields' messages clearly reflect her frustration and anger over turn of events in which a TRO was issued without, in her view, proper notice, and in connection with a matter that she believed had been resolved through discussions with inside counsel at Corporate Express. However, Ms. Fields (who, according to her voicemail messages, clerked for a judge) well should have known that the proper way to reflect her disagreement was to file a motion, and not to leave insulting and improper voicemail messages for the judge and his staff.

5

February 18 that Ms. Fields recognized there was a dispute about the settlement, and thus authorized an appearance by counsel (03/24/00 Tr. at 30-32).[4]

On February 18, 2000, the USOP defendants also served on plaintiff a written response to the document request (*see* Defs.'s Mem. in Resp. to Pl.'s Req. for Preclusion ("Defs.' Mem."), App. 1(c)). That response, served one day late, objected to every request except one (No. 25) (*Id.*). As to each of the other 28 requests, the written response recited the objection that the requests sought disclosure of confidential and proprietary information, but that if the final settlement agreement between the USOP defendants and plaintiff was not executed, responsive documents nonetheless would be produced upon signing an appropriate protective order (*Id.*). In addition, as to 23 of the 28 requests, the USOP defendants also asserted the objection that the discovery requests were overly broad and vague, and sought information that was neither relevant nor likely to lead to relevant information (*Id.*). The USOP defendants did not produce any documents on February 18.

The parties then appeared before the District Judge on February 22, 2000. At that time, the District Judge allowed USOP defendants an extension of 14 days to respond to the written discovery requests (03/22/00 Tr. at 11). The District Judge made clear that the 14 days would run from February 17, 2000, the date that the discovery responses were originally due, and not from February 22 (*Id.*, at 18-19). Thus, the time for the USOP defendants to provide documents in response to the District Judge's original discovery order was extended to March 2, 2000.

At the February 22 hearing, the District Judge also refused the plaintiff's request to extend the TRO (02/22/00 Tr. at 11-12, 18). Rather, the District Judge directed that if plaintiff still believed

---

[4]After appearing, the USOP defendants filed a motion to dismiss on the ground that the case had been settled. The District Judge held a lengthy evidentiary hearing on that motion on March 14, 2000, after which the District Judge found that no settlement had been reached (03/14/00 Tr. at 117-18).

6

preliminary relief was necessary, then plaintiff should promptly file a preliminary injunction motion. (*Id.*, at 12-13). In response to plaintiff's assertion that it would be difficult to file a preliminary injunction motion without obtaining the expedited discovery, the District Judge and plaintiff's counsel engaged in the following colloquy:

> THE COURT: Well, you filed a verified complaint . . . in the first instance when that was before the Court, and the Court considered that verified complaint when you were heard in open court and on the record on the granting of the TRO.
>
> And that verified complaint was signed by the president of the plaintiff and was signed by counsel, and the Court did consider that.
>
> And so I would assume that your motion for preliminary injunction would rest on essentially the same issues that were contained within the verified complaint.
>
> MR. SHEEHAN: Yes. Yes, they would, Your Honor. And given that, we would file that motion today.

(*Id.* at 12-13). The District Judge set a briefing schedule which would apply if plaintiff filed such a motion (*Id.*). However, plaintiff did not file a motion for preliminary injunction either on February 22 or at any time thereafter.

Despite the District Judge's order, the USOP defendants did not produce any documents by March 2, 2000. According to the USOP defendants, the reason for this delay was their inability to reach an agreement with the plaintiff as to the particulars of a protective order governing who may view confidential information produced by the USOP defendants. The plaintiff wanted the right to show confidential information to certain employees of Corporate Express; the USOP defendants resisted that proposal, and proposed instead that plaintiff accept production of the documents under an oral agreement that they would be for "attorneys eyes only" pending entry of a formal protective

7

order (03/14/00 Tr. at 35-36). Plaintiff's counsel insisted that they needed to review the documents with certain Corporate Express employees in order to make sense of them (*Id.*, at 84-84).

On March 3, 2000, the USOP defendants filed a motion for protective order, asking the District Judge to enter an order that would prohibit lawyers on either side from showing confidential materials to client representatives (Defs.' Mem., App. 1(M)). However, that motion was not filed until *after* the March 2, 2000 deadline set by the District Judge for responding to plaintiff's document request.

At a hearing on March 10, 2000, the District Judge also took note of the fact that the USOP defendants' original response to the written discovery requests, served on February 18, 2000, was unsigned. Defense counsel said that was an inadvertent omission, attributable to the fact that "[t]here was a lot going on" at the time the document request was served (03/10/00 Tr. at 11). The District Judge directed that defense counsel file in the Clerk's Office within seven days a copy of "the response that you completed, which you say you do not sign and that you say you caused to be faxed to the plaintiff" (*Id.* at 14). The District Judge further stated that "I'm placing this burden on Mr. Kaplan to file that response in the Clerk's Office within seven days. This should become part of the record" (*Id.*).

After a brief hiatus during which the parties attempted unsuccessfully to reach a settlement, on March 24, 2000 the District Judge held argument on a number of the pending motions. Of particular significance to the current issue before this Court are the District Judge's rulings on two of those motions.

*First*, the District Judge denied plaintiff's renewed motion for a TRO. The District Judge reminded plaintiff that at an earlier proceeding (on February 22), the District Judge had asked

8

whether plaintiff's counsel intended to file a motion for preliminary injunction, and plaintiff's counsel indicated that he would do so that day (03/24/00 Tr. at 18-19). The District Judge found that "nothing prevented the plaintiff from filing a motion for preliminary injunction," and that proceeding by way of a preliminary injunction "would be the more appropriate way to seek this extraordinary relief" (*Id.* at 19).

*Second*, the District Judge found that the USOP defendants had violated three of his orders. The District Judge found that the USOP defendants had failed to comply with his order requiring expedited responses to the document requests by 3:00 p.m. on February 17, 2000, without timely filing a motion to extend the period for compliance. When a written response was served on February 18, that response raised objections to all but one of the 28 requests; no documents were produced. The District Judge further found that the objections posed were frivolous as to Document Requests Nos. 1 through 4, 6 through 16, 18 through 20, and 23 (03/24/00 Tr. at 133).

The District Judge also found that the USOP defendants had violated his February 22, 2000 order. In that order, the District Judge had allowed the USOP defendants an extension of 14 days from the original deadline of February 17 – that is, to March 2, 2000 – to respond to the document requests, which in effect had given the USOP defendants an opportunity to purge the failure to comply with the February 17 deadline. The District Judge rejected the USOP defendants' argument that it was sufficient for them file a written response to document requests, while awaiting the entry of a protective order to produce any documents whatsoever (*Id.*, at 133). While the USOP defendants filed a motion for entry of a protective order to govern the use of documents to be produced, they did not do so until after the March 2, 2000 date for compliance with the Court's

9

order. Moreover, as of the date of the hearing, the USOP defendants had failed to produce any documents, even those that would not be subject to confidentiality.

Finally, the District Judge found that the USOP defendants had violated his March 10 order requiring that they file in the Clerk's Office a copy of the unsigned response to the document request that the USOP defendants said that they served on February 18, 2000 (*Id.* at 34). The District Judge found that he had ordered defense counsel to file a copy of the unsigned request, but what defense counsel instead did was to file a copy of the response to the document requests that was revised in two ways: it was signed, and a certificate attesting to the accuracy of the response was attached.

### D.     Subsequent Developments.

Since the District Judge's March 24, 2000 ruling, there have been three further developments that are of significance to the Court in connection with this motion.

*First*, during a proceeding on April 25, 2000, plaintiff's counsel reported to the District Judge that "it's possible that our need for emergency injunctive relief may have become mooted" (04/25/00 Tr. at 2-3). Plaintiff's counsel reported that there were several reasons for this, including that: (1) the USOP defendants had represented that they will not misappropriate or use the plaintiff's trade secret information; (2) the USOP defendants represented that they have no intention of hiring Messrs. Raby or Roark; (3) Messrs. Raby and Roark had represented that they would not misappropriate or use trade secret information; and (4) the passage of time may have led to the information for which plaintiff sought protection becoming "stale" (*Id.*, at 3). Plaintiff's counsel emphasized that his statements were not yet "definitive," and that he would inform the District Judge within the next seven to fourteen days whether the need for emergency relief had become mooted

(*Id.* at 3-4). This Court has been presented with no indication of whether plaintiff followed up and provided the District Judge with more "definitive" information.

*Second*, on July 21, 2000, the plaintiff reported to the District Judge that the complaint as against Messrs. Raby and Roark had been dismissed pursuant to settlement (07/21/00 Tr. at 2).

*Third*, in the more than six months that have passed since the March 24 hearing, plaintiff has not moved for a preliminary injunction -- which, of course, they were free to do at any time.

## II.

Courts have the power, and the responsibility, to advance the "orderly and expeditious disposition of a case." *Link v. Wabash Railroad Co.*, 370 U.S. 626, 630-31 (1962). When a party flouts a Court's authority to do so, the Court may take action, under either its inherent powers or by virtue of the Federal Rules of Civil Procedure. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50-51 (1991); *Barnhill v. United States*, 11 F.3d 1360, 1367-68 (7th Cir. 1993). In this case, the District Judge imposed sanctions under the authority of the Federal Rules of Civil Procedure rather than under his inherent powers (03/24/00 Tr. at 134). Thus, we focus on whether any of the preclusion orders that plaintiff seeks are appropriate under the Federal Rules of Civil Procedure – although the analysis is essentially the same as under the Court's inherent powers. *Cobell v. Babbit*, 37 F. Supp. 2d 6, 18 (D.D.C. 1999); *Gates Rubber Co. v. Bando Chemical Indus., Ltd.*, 167 F.R.D. 90, 107 (D. Col. 1996) ("any distinctions between Rule 37 and the inherent powers of the Court are distinctions without differences").

In general, sanctions for violations of court orders should seek to serve one or more of the following purposes: (1) to remedy the prejudice caused to an innocent party by a violation of the court order; (2) to punish the party who violates an order; and/or (3) to deter others from committing

like violations. *See generally, National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976); *Telectron v. Overhead Door Corp.*, 116 F.R.D. 107, 135 (S.D. Fla. 1987). A Court is not required "to fire a warning shot" before selecting a sanction, *Hal Commodities Cycles Mgmt. Co. v. Kirsch*, 825 F.2d 1136, 1139 (7th Cir. 19878); nor is the Court required to select the "least drastic" or "most reasonable" sanction. *Melendez v. Illinois Bell Telephone Co.*, 79 F.3d 661, 672 (7th Cir. 1996).

Nonetheless, the Seventh Circuit opinions make it clear that a court imposing sanctions "must be guided by a certain measure of restraint." *Barnhill*, 11 F.3d at 1367. The sanction selected must meet "the norm of proportionality," *Newman v. Metropolitan Pier & Exposition Authority*, 962 F.2d 589, 591 (7th Cir. 1992), and must be one that "a reasonable jurist, apprized of all the circumstances, would have chosen as proportionate to the infraction." *Salgado v. General Motors Corp.*, 150 F.3d 735, 740 (7th Cir. 1998); *see also Langley v. Union Elec. Co.*, 107 F.3d 510, 515 (7th Cir. 1997) ("an award of sanctions must be proportionate to the circumstances surrounding the failure to comply with the discovery"). As one court vividly put it, judges must "take pains neither to use an elephant gun to slay a mouse nor to wield a cardboard sword if a dragon looms." *Anderson v. Beatrice Foods Co.*, 900 F.2d 388, 395 (1st Cir.1990).

In this case, the District Judge already has determined that monetary sanctions are fully appropriate for the USOP defendants' violations of court orders, but that the imposition of a default judgment would be "excessive" (03/24/00 Tr. at 134). In the Court's view, that finding reflects the deeply-held preference for deciding cases on the merits through the clash of the adversarial process. *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90, 108 (D. Colo. 1996)

This Court believes that like the sanction of default, entry of preclusion orders here would be "excessive." The preclusion orders that plaintiff's seeks would skew the adversarial process in varying degrees, ranging from barring the USOP defendants from offering documentary evidence on certain points to barring them from defending the case at all. Taking into consideration the three underlying purposes of sanctions – to remedy prejudice, to punish, and to deter – the Court believes that the proposed preclusion orders are disproportionate to the violations that occurred.

### A.

We address first the question of prejudice. For several reasons, the Court finds that plaintiff has suffered no prejudice that would support tilting the playing field in its favor at trial.

*First*, and foremost, plaintiff has not claimed that the USOP defendants' violations of the District Judge's discovery orders have impaired plaintiff's ability to prove its case on the merits at trail. Nor could plaintiff reasonably advance such an argument. The USOP defendants' failure to meet the deadlines for discovery set by the District Judge did *not* result in a complete inability of plaintiff to obtain documents; rather, it delayed the production of those documents. For this reason, plaintiff's reliance on *Langley* is misplaced. In that case, plaintiffs misled the defendant for approximately one year concerning the status of certain discovery, only to ultimately disclose that the item that had been sought in discovery – a furnace that was at the heart of a tort case – had been lost. By contrast to *Langley*, this case involves no comparable delay or complete loss of evidence central to the case.[5]

---

[5] Nor does the decision in *Melendez v. Illinois Bell Telephone Co.*, 79 F.3d 661 (7th Cir. 1996), support plaintiff's assertion that a preclusion order is appropriate as a result of the delay of providing discovery. In *Melendez*, the delay resulted in documents being produced to the plaintiff only two days before trial, which the Court found had "greatly prejudiced" the plaintiff. 79 F.3d at 672. In this case there is not yet in place a trial schedule, and thus we are not presented with a case of prejudice by "last minute production" as was true in *Melendez*.

13

*Second*, the Court disagrees with plaintiff's assertion that the delay in discovery resulted in prejudice to Corporate Express because it "stole[] plaintiff's right to emergency relief" (Pl.'s Reply Mem. at 3). While plaintiff points to the District Judge's comment that the USOP defendants' conduct "has deprived plaintiff of the ability to file a motion for preliminary injunction"(03/24/00 Tr. at 129), a complete review of the record shows that the District Judge earlier had found that this was not the case – and that counsel for plaintiff had agreed. During the hearing on February 22, 2000, the Court discussed with plaintiff's counsel this specific question of plaintiff's ability to seek preliminary injunctive relief in the absence of document production. In that colloquy, the District Judge expressed the view that plaintiff could seek a preliminary injunction based on the allegations in the verified complaint. Plaintiff agreed, and indicated that it would file a motion that very day (02/22/00 Tr. at 12-13); but plaintiff failed to do so. When plaintiff subsequently asked the Court to enter a renewed TRO, the District Judge declined to do it, specifically stating that "nothing prevented the plaintiff from filing a motion for preliminary injunction" (03/24/00 Tr. at 19). We believe that this full review of the record reveals that plaintiff was not impeded in its ability to seek preliminary injunctive relief by the failure of the USOP defendants to comply with the District Judge's discovery orders.

Moreover, while plaintiff asserts that it was deprived of the ability to file a motion for preliminary injunction, plaintiff has not identified any prejudice that it has suffered by virtue of not seeking preliminary injunctive relief. To the contrary, as the case has evolved, it appears that the emergency plaintiff claimed at the time the case was filed has receded. As plaintiff reported on April 25, the USOP defendants do not employ Messrs. Raby and Roark and have no intention of doing so; the USOP defendants, Mr. Raby and Mr. Roark all have represented that they will not misappropriate

14

or use trade secret information; and the passage of time may have led to the information for which plaintiff sought protection becoming "stale" (04/25/00 Tr. at 3). Moreover, since that time, the plaintiff has entered into a settlement agreement with Messrs. Raby and Roark, dismissing all claims against them. Plaintiff has not identified any breach of its rights that has occurred since the filing of the lawsuit, that might have been – but was not – avoided because of the absence of preliminary injunctive relief.

Finally, the preclusion orders that plaintiff proposes are not reasonably tailored to address any prejudice that plaintiff claims to have suffered in its efforts to seek preliminary injunctive relief. The Court fails to see how skewing the case at the trial on the merits would remedy any harm suffered by the plaintiff having been impeded in its ability to obtain preliminary injunctive relief. The question of whether a plaintiff is entitled to the interlocutory relief of a preliminary injunction is not a determination on the merits, *Chathas v. Local 134*, No. 99-4314, Slip Op. at 6 (7th Cir. Oct. 18, 2000) and presents different considerations than those at a trial on the merits. Had plaintiff believed it suffered prejudice to its ability to seek preliminary relief, plaintiff should have filed the motion for preliminary injunction (as it told the District Judge it would do on February 22), and then asked for a preclusion order at the preliminary injunction hearing to address any prejudice at that preliminary proceeding caused by the USOP defendants' violation of the court orders.

*Third*, the only demonstrable prejudice that plaintiff suffered as a result of the violations of the court orders was the fees and costs that plaintiff incurred in seeking to redress those violations. However, the District Judge already has remedied that prejudice by ordering the USOP defendants to pay plaintiff's fees and costs. And those fees and costs have been paid – to the tune of

15

$23,834.04. A preclusion order is not necessary or appropriate to redress this prejudice that the plaintiff suffered.

**B.**

Nor is a preclusion order appropriate as a means of punishing the USOP defendants for the violations of the court orders. In so finding, this Court should not be read as in any way countenancing the failures to comply with orders. It would have been a simple matter for the USOP defendants to timely appear on or before February 17 and respond to the written discovery (or explain why an extension of time to do so was needed), even if Ms. Fields had believed the dispute was settled. It also would have been a simple matter for the USOP defendants to file a timely motion for protective order prior to March 2 (rather than an untimely motion on March 3), seeking to resolve the question of who may review confidential documents. Nor is there any reason why the USOP defendants could not have produced those documents that would not be subject to the confidentiality requirement while awaiting resolution of a *timely* motion. And, if the USOP defendants thought there was some ambiguity about what document they were ordered to file with the Clerk's Office (in viewing the record, there should not have been), they should have clarified that matter.

In short, the USOP defendants' inhouse and outside counsel engaged in a series of unwise decisions and lapses of judgment. For that, the USOP defendants have been punished by being required to pay a substantial amount in attorneys' fees and costs to plaintiff's counsel. However, we do not think that these sins of the USOP defendants' counsel should be visited upon the USOP defendants by entering a preclusion order that facilitates – or preordains – a victory for Corporate Express at trial.

16

## C.

Finally, we turn to the question of deterrence. To be sure, violation of court orders is to be strongly discouraged, and it stands to reason that the greater the punishment imposed, the more that violations of court orders will be deterred. But deterrence is not the only value to be considered when fashioning sanctions. The Court believes that the goal of deterrence, as well as the other goals underlying sanctions (punishment and remedy of prejudice), must be balanced along with the desire to see cases justly decided on their merits through the adversarial process, without the Court tipping the scales in one direction or the other. In this case, a punishment that requires payment of nearly $25,000 in fees and costs early in the case certainly is calculated to discourage violations of court orders. Particularly in the absence of any prejudice, the further sanction that plaintiff seeks, which would alter the balance of power at trial, is not warranted.

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that plaintiff's request for a preclusion order be denied. However, in order to eliminate any vestiges of the economic prejudice suffered by plaintiff in seeking to hold the USOP defendants accountable for their violations of the court orders, the Court respectfully recommends that the USOP defendants be required to pay plaintiff's fees and costs incurred in briefing the issue of preclusion order.[6]

Specific written objections to this report and recommendation may be served and filed within 10 business days from the date that this order is served. Fed. R. Civ. P. 72(a). Failure to file

---

[6]The Court notes that this amount should be modest, as plaintiff's filings consisted of a seven page opening memorandum and a four page reply memorandum.

17

objections with the district court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the report and recommendation. *See Video Views, Inc. v. Studio 21, Ltd.,* 797 F.2d 538, 539 (7th Cir. 1986).

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

Dated: October 26, 2000